# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, | ) |
| | ) |
| Plaintiff, | ) Case No._____ |
| | ) |
| v. | ) |
| | ) |
| | ) **COMPLAINT FOR VIOLATIONS OF** |
| | ) **THE FEDERAL SECURITIES LAWS** |
| CUBIC CORPORATION, BRADLEY H. FELDMANN, DAVID F. MELCHER, PRITH BANERJEE, BRUCE G. BLAKLEY, DENISE L. DEVINE, MAUREEN BREAKIRON-EVANS, CAROLYN FLOWERS, JANICE M. HAMBY, and STEVEN J. NORRIS, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |

Plaintiff Michael Kent ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Cubic Corporation ("Cubic" or the "Company") and the members of Cubic's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Cubic will be acquired by Veritas Capital ("Veritas") and Elliott Investment

Management L.P. ("Elliott") through Atlas CC Acquisition Corp. ("Parent") and Atlas Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On February 8, 2021, Cubic announced its entry into an Agreement and Plan of Merger dated February 7, 2021 (as amended on March 30, 2021, the "Merger Agreement") to merge Cubic with Parent and Merger Sub. Cubic stockholders will receive $75.00 in cash for each share of Cubic common stock they own under the current terms of the Merger Agreement (the "Merger Consideration").

3. On March 26, 2021, Cubic filed a Schedule 14A Definitive Proxy Statement (as supplemented on April 5, 2021, the "Proxy") with the SEC in which defendants recommend that Cubic stockholders approve the Proposed Transaction. The Proxy, however, omits or misrepresents material information concerning, several critical items, including: (a) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Board's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Raymond James & Associates, Inc. ("Raymond James"); and (b) the potential conflicts of interest faced by Company insiders. Defendants authorized the issuance of the false and misleading Proxy in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

---

[1] Non-party Veritas is a private equity investment firm headquartered in New York, New York. Non-party Elliott is an investment management firm also headquartered in New York, New York. Non-party Parent is a Delaware corporation and an affiliate of The Veritas Capital Fund VII, L.P. Parent's principal executive offices are located at c/o Veritas Capital Fund Management, L.L.C., 9 West 57th Street, 32nd Floor, New York, New York 10019. Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent. Merger Sub's principal executive offices share the same location with that of parent.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of Cubic

10. Defendant Cubic is a Delaware corporation, with its principal executive offices located at 9233 Balboa Avenue, San Diego, California 92123. Cubic's common stock trades on the New York Stock Exchange under the ticker symbol "CUB."

11. Defendant Bradley H. Feldmann ("Feldmann") is Chairman of the Board, has served as President and Chief Executive Officer ("CEO") of the Company since July 2014 and has been a director of the Company since 2014.

12. Defendant David F. Melcher ("Melcher") is Lead Independent Director and has been a director of the Company since September 2017.

13. Defendant Prith Banerjee ("Banerjee") has been a director of the Company since 2018.

14. Defendant Bruce G. Blakley ("Blakley") has been a director of the Company since 2008.

15. Defendant Denise L. Devine ("Devine") has been a director of the Company since 2019.

16. Defendant Maureen Breakiron-Evans ("Breakiron-Evans") has been a director of the Company since 2017.

17. Defendant Carolyn Flowers ("Flowers") has been a director of the Company since 2019.

18. Defendant Janice M. Hamby ("Hamby") has been a director of the Company since 2015.

19. Defendant Steven J. Norris ("Norris") has been a director of the Company since 2014.

20. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

21. On February 8, 2021, Cubic announced in relevant part:

SAN DIEGO, February 8, 2021 – Cubic Corporation (NYSE: CUB) ("Cubic" or the "Company") today announced that it has entered into a definitive agreement (the "Agreement") with an affiliate of Veritas Capital ("Veritas"), under which Veritas and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), will acquire Cubic for $70.00 per share in cash.

Under the terms of the Agreement, Cubic shareholders will receive $70.00 in cash for each share of Cubic's common stock they currently hold, representing a premium of approximately 58% to Cubic's unaffected closing stock price on September 18, 2020, the last trading day before the Company's disclosure of third-party interest in

4

potentially acquiring Cubic. The all-cash transaction will be valued at approximately $2.8 billion, including the assumption of debt.

Following the closing of the transaction, the Company will remain based in San Diego, California. The transaction is expected to be seamless for customers and employees across Cubic's businesses.

Bradley H. Feldmann, Chairman, President and Chief Executive Officer of Cubic Corporation, said, "This transaction is in the best interests of our shareholders and provides them with a significant premium and liquidity – while accelerating future growth to the benefit of our employees and customers. Our success in attracting a premier, deeply experienced partner and securing a transaction at this premium reflects the positive momentum of our business. Although last fiscal year brought unprecedented challenges, Cubic was able to build on our strengths, protect our people, serve our customers and deliver a value-maximizing deal for our shareholders. We look forward to partnering with Veritas and remain grateful to our customers for their trust and to our fellow CUBES for their unwavering commitment to delivering innovative, mission-critical solutions."

Ramzi Musallam, CEO and Managing Partner of Veritas, said, "Cubic has an unparalleled history of delivering innovative technology-based solutions to address the mission-critical needs of the global transportation and defense markets. We look forward to leveraging our expertise in the government technology market – a key focus of Veritas since our inception – in partnership with the team at Cubic to accelerate product development and drive growth as Cubic continues to improve the quality of global transportation systems and to deliver innovative defense solutions."

On behalf of Elliott, Jesse Cohn said, "Elliott believes this outstanding transaction maximizes value for Cubic's shareholders, and we are pleased to have engaged constructively with the Company's Board and management to reach this outcome. We look forward to partnering with Veritas and the Cubic team as we work through Cubic's next phase of growth as a private company." Elliott has entered into an agreement to vote its shares in support of the transaction.

**Transaction Details**

The transaction will be financed through a combination of equity and debt financing. The Board of Directors of Cubic has unanimously approved the Agreement and recommends that Cubic shareholders vote in favor of the transaction.

22. On March 22, 2021, however, Singapore Technologies Engineering Ltd ("ST Engineering") made an unsolicited proposal from to acquire all of Cubic's outstanding stock. ST Engineering proposed to pay a $6 per share more than the Merger Consideration or $76.00 per share. The Company announced:

> SAN DIEGO-- Cubic Corporation (NYSE: CUB) ("Cubic" or the "Company") today confirmed that it recently received an unsolicited proposal from Singapore Technologies Engineering (SGX: S63; Bloomberg-STE: SP) ("ST Engineering") to acquire all of Cubic's outstanding stock for $76 per share in cash (the "STE Proposal"). The STE Proposal contemplates that, immediately following the acquisition of all of Cubic's outstanding stock, STE would sell Cubic's CMPS business to an affiliate of Blackstone Tactical Opportunities.
>
> On February 7, 2021, Cubic's Board of Directors (the "Board") unanimously approved entering into a definitive merger agreement (the "Veritas Merger Agreement") with an affiliate of Veritas Capital ("Veritas"), under which Veritas and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), will acquire Cubic for $70 per share in cash. The Veritas Merger Agreement remains in full force and effect, and the Board of Directors of Cubic has not withdrawn or modified its recommendation that the stockholders of Cubic vote in favor of the approval of the merger, the Veritas Merger Agreement and the transactions contemplated thereby.
>
> However, Cubic's Board of Directors has determined that the STE Proposal is or would reasonably be expected to lead to a superior proposal, as that term is defined under the Veritas Merger Agreement. Accordingly, the Board has determined to engage in discussions with ST Engineering to further evaluate the merits and risks of the proposed transaction relative to the pending transaction with Veritas and Evergreen, including the value offered to our shareholders, the expected completion timing of each transaction, and the regulatory and closing risks associated with each transaction. Notwithstanding the Board's decision to engage with ST Engineering and further evaluate the STE Proposal, at this time the Board (a) continues to recommend that the shareholders vote in favor of adopting the Veritas Merger Agreement at the special meeting relating to the proposed transaction, (b) is not modifying, altering or withdrawing its recommendation to shareholders, or agreeing or announcing an intention to do so, and (c) is not making any recommendation with respect to the STE Proposal.

23.     ST Engineering would not be deterred. It subsequently improved its offer to $78.00 per share – or two dollars per share more than previously offered. The Board, however, rejected this improved proposal, and instead accepted a $75.00 per share revised proposal from Veritas and Elliott. On March 31, 2021, the Company announced:

> SAN DIEGO, March 31, 2021 – Cubic Corporation (NYSE: CUB) ("Cubic" or the "Company") today announced that it has accepted a proposal from Veritas Capital ("Veritas") and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), to increase the price per share of their pending acquisition of Cubic to $75.00 per share in cash. The Company has accepted this proposal and entered into an amendment (the "Amendment") to its previously

6

announced definitive merger agreement with affiliates of Veritas (the "Merger Agreement" and, as amended, the "Amended Agreement") to acquire the Company.

Under the terms of the Amended Agreement, Cubic shareholders will receive $75.00 in cash for each share of Cubic's common stock, representing a premium of approximately 69% to Cubic's unaffected closing stock price on September 18, 2020, the last trading day before the Company's disclosure of third-party interest in potentially acquiring Cubic. The all-cash transaction will be valued at approximately $3.0 billion, including the assumption of debt.

Cubic's Board of Directors (the "Board") gave due consideration to the revised proposal it received from Singapore Technologies Engineering Ltd (SGX: S63; Bloomberg-STE:SP) ("ST Engineering") to acquire the Company for $78.00 per share (the "ST Engineering Proposal"). In making its decision, the Board carefully assessed the relative benefits and risks of the proposals from both Veritas and Evergreen and ST Engineering. The Board determined that, based on the superior certainty and anticipated timing of closing the existing transaction with Veritas and Evergreen, the revised proposal from Veritas and Evergreen was in the best interests of all Cubic's shareholders.

In connection with this determination, the Board (a) approved and adopted the Amended Agreement, (b) recommends that the Company's shareholders adopt the Amended Agreement, (c) recommends that the Company's shareholders vote "FOR" each of the proposals described in the definitive Proxy for the Special Meeting of Cubic's shareholders filed with the United States Securities and Exchange Commission ("SEC") and mailed to shareholders on or about March 26, 2021, and (iv) determined that the ST Engineering Proposal, after giving effect to all revisions made to such proposal by ST Engineering, is neither a "superior proposal" nor a proposal that would reasonably be expected to lead to a "superior proposal" as that term is defined in the existing Merger Agreement. As a result, Cubic has ceased engagement with ST Engineering in accordance with the terms of the Amended Agreement.

**The Proxy Contains Material Misstatements and Omissions**

24. The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Cubic's stockholders. The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

25. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the

7

data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Board's financial advisors, J.P. Morgan and Raymond James; and (b) the potential conflicts of interest faced by Company insiders.

***Material Omissions Concerning J.P. Morgan's and Raymond James' Financial Analyses***

26. The Proxy describes J.P. Morgan's and Raymond James' fairness opinions and the various valuation analyses performed in support of their opinions. In doing so, however, the Proxy omits material information regarding J.P. Morgan's and Raymond James' financial analyses, including key inputs and assumptions underlying these analyses. Without this information, as described below, Cubic's public stockholders are precluded from understanding these analyses fully. These same stockholder, in turn, will be unable to determine what weight, if any, to place on J.P. Morgan's and Raymond James' fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

27. First, the Proxy fails to disclose the respective multiples and financial metrics for each of the comparable companies and transactions analyzed, in connection to J.P. Morgan's *Public Trading Multiples Analysis* and *Selected Transaction Analysis*

28. Similarly, the Proxy fails to disclose: (a) quantification of the terminal values of Cubic; and (b) quantification of the individual inputs and the assumptions underlying the range of discount rates of 9.50% to 10.50% as they pertain to J.P. Morgan's *Discounted Cash Flow Analysis*.

29. With respect to J.P. Morgan's *Analyst Price Targets for the Company* analysis, the Proxy fails to disclose the individual price targets for Cubic and the sources thereof.

30. With respect to Raymond James' *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (a) Cubic's fiscal year 2025 EBITDA utilized to derive the terminal value; (b) quantification of the terminal values of Cubic; and (c) quantification of the individual inputs and the assumptions underlying the range of discount rates of 9.5% to 11.5%.

31. Without such undisclosed information, Cubic stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan and Raymond James were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's and Raymond James' opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

32. The omission of this material information renders the statements in the "Opinion of J.P. Morgan" and "Opinion of Raymond James" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

33. The Proxy fails to disclose material information concerning the potential conflicts of interest faced by Company insiders, including whether they discussed or were promised any employment or other financial incentives in supporting the Proposed Transaction over that which was proposed by ST Engineering.

34. In that regarding the Proxy provides that none of the members of the Board or our executive officers has entered into any agreement, arrangement or understanding with the Veritas Sponsor, Elliott Sponsors, Parent or any of its or their respective executive officers, directors or affiliates regarding employment with, or the right to purchase or participate in the equity of, Parent, the surviving corporation or any of their affiliates. *See* Proxy at 81. The Proxy omits the details of any employment and retention-related discussions and negotiations that occurred between Veritas or Elliott and Cubic's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy also omits whether any of Veritas or Elliott's proposals

or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

36. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Cubic's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

38. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Cubic will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

35. Plaintiff repeats all previous allegations as if set forth in full.

36. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, (a) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Board's financial advisors, J.P. Morgan and Raymond James; and (b) the potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

39. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

40. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

41. Plaintiff repeats all previous allegations as if set forth in full.

42. The Individual Defendants acted as controlling persons of Cubic within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cubic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the

Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

45. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Cubic stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Cubic, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Cubic stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 7, 2021

**LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*